91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darryl Orrin BAKER, Defendant-Appellant.
 No. 95-2122.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1996.
 
 Before: KEITH, KENNEDY, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant appeals his sentence imposed after a jury found him guilty of distributing and possessing with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), but not guilty of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Defendant argues that the District Court erred (1) in enhancing defendant's base offense level by two points for possession of a firearm in relation to a drug offense when he had been acquitted of the 924(c)(1) count; (2) in calculating the total amount of cocaine for which defendant should be held responsible under the Guidelines; and (3) in applying the 100 to 1 ratio between crack cocaine and powder cocaine found in 21 U.S.C. § 841(b) and U.S.S.G. § 2D1.1. For the following reasons, we AFFIRM the District Court's sentencing determinations.
 
 I.
 
 2
 The evidence presented at trial showed that on September 21 and 22, 1994, Jerome Barfield, a confidential police informant, made two controlled buys of cocaine base, totalling 2.86 grams, from defendant at the home of Thurman Jones. Barfield testified that he had purchased crack cocaine from the defendant before and had followed the same procedure as that employed for the controlled buys. Barfield went to the home of Thurman Jones and told Jones that he wanted to purchase a certain quantity of crack cocaine. Jones paged defendant, indicating on the pager's screen a numerical code for the amount of cocaine Barfield wanted. Defendant called to verify the amount and then, a short time later, arrived at Jones' residence with the cocaine base. Jones testified that he had an agreement with the defendant whereby the defendant could use his telephone and his home to transact his drug business.[1] Jones and another witness, Leon Holley, testified that they too purchased cocaine base from defendant using the procedure Barfield described.
 
 
 3
 After the September 22 controlled transaction between Barfield and the defendant, police officers who were following the defendant stopped his car and arrested him. Upon searching the car, the officers found 1.6 grams of crack cocaine scattered on the front seats, between the seats, and on the floorboards. On the defendant himself, they found the $100 bill that Barfield had used to purchase the cocaine base earlier that day.
 
 
 4
 During the evening of September 22, the police obtained a search warrant for defendant's residence. While executing the search, the police found: (1) 56.1 grams of cocaine base in the kitchen; (2) $1850 hidden in the hem of a window curtain in defendant's bedroom, including two fifty dollar bills that were identified as the bills used to purchase the cocaine base on September 21; and (3) a loaded Smith & Wesson .38 caliber revolver in the headboard of defendant's bed.
 
 
 5
 At the sentencing hearing, the District Court determined that defendant's base offense level was thirty-four and that his criminal history category was III. The judge added a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) because of the handgun found in defendant's bedroom. Therefore, defendant's total offense level was thirty-six, resulting in a sentence range of 235-293 months. The court imposed a sentence of 235 months on each of the three counts, to be served concurrently, five years supervised release on each count, to be served concurrently, and a $150 special assessment. This appeal followed.
 
 II.
 
 6
 Appellate review of sentences imposed under the Guidelines are governed by 18 U.S.C. § 3742, which provides in relevant part:
 
 
 7
 (e) Consideration.--Upon review of the record, the court of appeals shall determine whether the sentence--
 
 
 8
 (1) was imposed in violation of law;
 
 
 9
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; ....
 
 
 10
 Id. § 3742(e). We review the District Court's application of the Guidelines de novo and its supporting factual findings for clear error. United States v. Wright, 12 F.3d 70, 72 (6th Cir.1993).
 
 A.
 
 11
 Defendant argues that the District Court erred in increasing his base offense level two points for possession of a firearm in relation to a drug offense. Defendant challenges the enhancement on two grounds. First, while defendant concedes that this circuit's precedent provides that an enhancement under U.S.S.G. § 2D1.1(b)(1) is permitted despite an acquittal under 18 U.S.C. § 924(c), United States v. Duncan, 918 F.2d 647 (6th Cir.1990), cert. denied, 500 U.S. 933 (1991), he asks us to reconsider and overrule this precedent in light of the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995). Second, defendant asserts that the District Court erroneously enhanced his offense level because there is no evidence that the weapon was used or possessed at any time to facilitate any illegal transaction. We reject both arguments.
 
 1.
 
 12
 Defendant contends that § 2D1.1(b)(1) and the relevant guidelines commentary, when applied to one charged with violating 18 U.S.C. § 924(c), conflicts with the Supreme Court's construction of § 924, as set forth in the Bailey decision. Section 924 makes it a federal offense to "use[ ] or carr[y]" a firearm "during and in relation to" a drug trafficking offense. Section 2D1.1(b)(1) of the Guidelines provides for a two-level enhancement "if a dangerous weapon (including a firearm) was possessed" during an offense involving drugs. We have held that an acquittal under § 924(c) does not preclude a sentencing enhancement for possession of a firearm under § 2D1.1(b)(1) because the government's burden is significantly lighter for sentencing purposes and the activity covered is broader. Duncan, 918 F.2d at 652. We also have upheld the commentary to § 2D1.1.[2] United States v. McGhee, 882 F.2d 1095 (6th Cir.1989).
 
 
 13
 Bailey does not overrule Duncan and its progeny nor does it alter the standards for determining whether enhancement pursuant to § 2D1.1(b)(1) is appropriate. In Bailey, the Supreme Court held that the term "use" in § 924(c)(1) requires proof of "active employment" of a weapon in order to sustain a conviction. Bailey, 116 S.Ct. at 505. However, the Court expressly distinguished the statutory term "use" from the term "possession" which may trigger a sentence enhancement under § 2D1.1(b)(1):
 
 
 14
 While it is undeniable that the active-employment reading of "use" restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs[, such as the] Sentencing Guidelines § 2D1.1(b)(1) [which] provides an enhancement for a person convicted of certain drug-trafficking offenses if a firearm was possessed during the offense.
 
 
 15
 Id. at 509. Thus, the Court acknowledged that although possession is insufficient to convict under § 924(c)(1), it may be sufficient to enhance a defendant's sentence under § 2D1.1(b)(1).
 
 
 16
 Moreover, defendant's argument fails because § 2D1.1(b)(1) does not interpret § 924(c). In fact, a different guideline, § 2K2.4, applies specifically to § 924(c) convictions.[3] Recently, this court followed Duncan and noted that, after Bailey, an acquittal on a § 924(c) charge may not decide the issue of possession because "uses or carries" under the statute does not always mean the same thing as "possesses." United States v. McCall, No. 95-3047, 1996 WL 296993 (6th Cir. June 6, 1996); see also United States v. Clements, No. 94-5224, 1996 WL 327659 (6th Cir. June 17, 1996) (reversing a defendant's conviction in light of Bailey, but remanding for resentencing because a § 2D1.1(b)(1) enhancement may now be appropriate); United States v. Hill, 79 F.3d 1477, 1486 n. 4 (6th Cir.1996) (citing Bailey in support of the proposition that an acquittal under § 924(c) does not preclude the district court from applying an enhancement under § 2D1.1(b)(1)). Thus, we have continued to recognize § 924(c) and § 2D1.1(b)(1) as independent provisions employing different standards. We therefore reject defendant's argument that Bailey overrules Duncan and its progeny.
 
 2.
 
 17
 Defendant also contends that the government did not establish that he possessed a weapon during the commission of the offense. Even if the government did meet its burden, defendant argues that he demonstrated that it was clearly improbable that the weapon was connected with the offense. We disagree.
 
 
 18
 The enhancement under § 2D1.1(b)(1) applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, application note 3. To apply the enhancement, the government must establish that (1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense. United States v. Hill, 79 F.3d 1477, 1485 (6th Cir.1996); United States v. Sanchez, 928 F.2d 1450, 1460 (6th Cir.1991). A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review. United States v. Moreno, 899 F.2d 465, 470 (6th Cir.1990).
 
 
 19
 Once it is established that a defendant possessed a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense. Sanchez, 928 F.2d at 1460. The burden then shifts to the defendant to show that it is "clearly improbable that the weapon was connected to the offense," in which case the enhancement would not apply. Id. at 1460.
 
 
 20
 In United States v. Snyder, 913 F.2d 300 (6th Cir.1990), cert. denied, 498 U.S. 1039 (1991), we upheld the district court's enhancement where two handguns were found in the defendant's bedroom nightstand and two kilograms of cocaine were found in the basement. Here, the police found a loaded gun in the headboard of defendant's bed and $1850 hidden in the hem of the window curtain above his bed. They also found cocaine in the kitchen. While it is true that no evidence shows that the defendant sold drugs in his residence, there is evidence that he stored drugs and the earnings from his drug sales at his house. The District Court determined that "there is sufficient evidence that the gun was on the premises to protect the drugs stored there [a]nd even more evidence, due to proximity, that the gun was on the premises to protect ... cash proceeds of drug sales." Thus, the evidence supports a finding that the weapon was present during the commission of the offense of possession with intent to distribute.[4] Because the weapon "could have facilitated" defendant's illegal cocaine transaction, defendant has not demonstrated that it is "clearly improbable" that the weapon was connected with the offense. Snyder, 913 F.2d at 304. The District Court did not clearly err in enhancing defendant's base offense level pursuant to § 2D1.1(b)(1).
 
 B.
 
 21
 Defendant also argues that the District Court erred in its calculation of the amount of cocaine chargeable to him under the Guidelines. The District Court determined that the defendant should be held responsible for 161.36 grams of crack cocaine. This amount included 100.8 grams, a quantity listed in the Presentence Investigation Report and extrapolated from the trial testimony of Leon Holley. Defendant contends that he should not be held accountable for this 100.8 grams because Holley was not a credible witness.
 
 
 22
 The amount of drugs chargeable to a defendant is a finding of fact reviewable by this court under the clearly erroneous standard. 18 U.S.C. § 3742(e); United States v. Ward, 68 F.3d 146, 149 (6th Cir.1995), cert. denied, 116 S.Ct. 1028 (1996); United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 990 (1990). For sentencing purposes, calculation of the quantity of drugs chargeable to a defendant must be supported by a preponderance of the evidence. United States v. Baro, 15 F.3d 563, 569 (6th Cir.), cert. denied, 115 S.Ct. 285 (1994). An approximation by a district court is not clearly erroneous if it is supported by competent evidence in the record, Ward, 68 F.3d at 149; United States v. Brannon, 7 F.3d 516, 520 (6th Cir.1993), or, in other words, by facts that have "some minimum indicium of reliability beyond mere allegation," United States v. Chalkias, 971 F.2d 1206, 1215 (6th Cir.1992) (quoting United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989)), cert. denied 506 U.S. 926 (1992).
 
 
 23
 Defendant challenges the District Court's finding that Holley's testimony was sufficiently reliable to support the drug quantity calculation. This determination depended solely on credibility assessments. Chalkias, 971 F.2d at 1215. Keeping in mind that on review this court "must give due regard to the opportunity of the district court to judge the credibility of witnesses," 18 U.S.C. § 3742(e), we find that the District Court did not clearly err in determining the amount of drugs chargeable to defendant. Holley's testimony was uncontradicted and it was corroborated by the testimonies of Jones and Barfield. Therefore, the District Court's calculation of drug quantity for guidelines purposes is supported by the record and does not constitute clear error.
 
 C.
 
 24
 Defendant argues that the District Court should have applied the offense level for cocaine and not that for cocaine base on the grounds that there is no scientific basis for the disparity in treatment found in both 21 U.S.C. § 841(b) and the Guidelines. Under 21 U.S.C. § 841(b), the mandatory minimum sentence for a given quantity of "cocaine base" is equivalent to the minimum for 100 times that amount of "cocaine." Compare 21 U.S.C. § 841(b)(1)(B)(ii) with 21 U.S.C. § 841(b)(1)(B)(iii). The sentencing guidelines mirror this 100:1 ratio. See U.S.S.G. § 2D1.1(a)(3), Drug Equivalency Table. Defendant urges this court to adopt the reasoning of United States v. Davis, 864 F.Supp. 1303 (N.D.Ga.1994), in which a district court applied the rule of lenity after concluding that cocaine and cocaine base are scientifically synonymous terms.[5]
 
 
 25
 Defendant's challenge is foreclosed by this court's decision in United States v. Smith, 73 F.3d 1414 (6th Cir.1996), in which we considered and rejected a defendant's argument that we should follow Davis. In Smith, we held that our decisions rejecting vagueness challenges to the 100:1 ratio prevented us from finding merit in the defendant's position.[6] We therefore find that the District Court correctly applied the stricter penalties for cocaine base offenses.
 
 III.
 
 26
 For the foregoing reasons, we AFFIRM.
 
 
 
 [1]
 Jones was named as a co-defendant on two counts in the indictment against the defendant. He pled guilty pursuant to a plea agreement and testified against the defendant
 
 
 [2]
 The commentary to § 2D1.1(b) states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b), application note 3
 
 
 [3]
 That guidelines provides:
 (a) If the defendant, whether or not convicted of another crime, was convicted under 18 U.S.C. § 844(h), § 924(c), § 929(a), the term of imprisonment is that required by statute.
 U.S.S.G. § 2K2.4(a).
 
 
 [4]
 Defendant argues that the enhancement was improper because there is no evidence that he carried the weapon with him when he made the sales. However, the offense here, as in Snyder, was possession with intent to distribute cocaine base--not distribution of cocaine base
 
 
 [5]
 The rule of lenity requires that a sentencing court impose the lesser penalty where there is an ambiguity about the reach of a criminal statute or the penalties to be imposed. Bifulco v. United States, 447 U.S. 381, 387 (1980)
 
 
 [6]
 We note that numerous other courts of appeals have declined to follow Davis. United States v. Jackson, No. 95-30211, 1996 WL 277409, at * 7 (9th Cir. May 28, 1996); United States v. Fisher, 58 F.3d 96, 98-100 (4th Cir.), cert. denied, 116 S.Ct. 329 (1995); United States v. Booker, 70 F.3d 488, 489-91 (7th Cir.1995), cert. denied, 116 S.Ct. 1334 (1996); United States v. Crawford, 83 F.3d 964 (8th Cir.1996)