COOK, Circuit Judge,
joined by MOORE, Circuit Judge.
Though we concur with Judge Gwin’s conclusions with respect to the statute-of-limitations, ICCTA-retroactivity, and prejudgment-interest issues, we write separately on the issue of damages. Courts speak through judgments, and the judgment appealed here represents Comerica’s first adverse judgment as opposed to “calculation” or “finding” as referenced by the dissent on damages. See California v. Rooney, 483 U.S. 307, 311, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) (per curiam) (holding that courts “review[] judgments, not statements in opinions”). Further, the district court incorrectly held that the damages issue had already been decided by this court in the prior appeal. Because we agree with Comerica that its liability *330 cannot be predetermined by a settlement to which it was not a party, we VACATE the district court’s damages determination and REMAND for consideration of proof as to damages owed by Comerica.

1. Law of the Case or Waiver

The Owner-Operators first insist that either the law-of-the-case or the waiver doctrine insulates the district court’s failure to consider the damages issue on remand. “Generally, the law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not.” United States v. Gibbs, 626 F.3d 344, 351 (6th Cir.2010) (emphasis added) (internal quotation marks omitted). At no point in the procedural history of this case was there a decision as to the amount of damages Comerica must pay that could have been challenged by Comerica but was not.
Clear Sixth Circuit precedent dictates that the complete relief Comerica obtained on summary judgment foreclosed the possibility of a cross-appeal because this court would have lacked jurisdiction to consider it. In Hensley v. Gassman, 693 F.3d 681 (6th Cir.2012), for example, the plaintiffs claimed that the defendant deputy sheriffs violated their Fourth Amendment rights. Id. at 686. Though the district court ruled that the deputies’ conduct violated the Fourth Amendment, it nevertheless granted them summary judgment on the basis of qualified immunity. Id. The plaintiffs appealed, and the deputies cross-appealed, contending that the district court erred in finding a constitutional violation. Id. The court dismissed the cross-appeal for lack of jurisdiction, reasoning that “[bjecause the Deputies obtained all the relief they sought from the district court on [the plaintiffs’] Fourth Amendment claim, we lack jurisdiction to consider the Deputies’ appeal.” Id. Other cases hold similarly. See Wheeler v. City of Lansing, 660 F.3d 931, 939 (6th Cir.2011) (“There is generally no appellate jurisdiction when the appellant does not seek a change in the relief ordered by the judgment appealed from.”); ASARCO, Inc. v. Sec’y of Labor, 206 F.3d 720, 722 (6th Cir.2000) (“It is a well settled principle that a prevailing party cannot appeal an unfavorable aspect of a decision in its favor.”); Olympic Fastening Sys., Inc. v. Textron, Inc., 504 F.2d 609, 618 (6th Cir.1974) (“Having received the full relief available to it ..., [the plaintiff] had no occasion to file an appeal.”).
Courts adopted this rule because “permitting review of a prevailing party’s claim creates tension with Article Ill’s prohibition against issuing advisory opinions.” Wheeler, 660 F.3d at 940. Moreover, abandonment of this sensible principle would likely lead to a flood of over-cautious appeals by prevailing parties.
This authority, which neither the dissent nor the Owner-Operators address, conclusively repudiates the contention that Com-erica forfeited any challenge to damages by failing to cross-appeal the district court’s judgment in Comerica’s favor. And the cases cited by the Owner-Operators and the dissent fail to support the dissent’s analysis, as they all involved a party that lost, at least in part, before the district court. See, e.g., Med. Ctr. Pharm. v. Holder, 634 F.3d 830, 832-34 (5th Cir.2011) (defendant FDA forfeited issue when it failed to raise it in initial appeal of district court’s grant of summary judgment for plaintiffs); United States v. Adesida, 129 F.3d 846, 849-50 (6th Cir.1997) (criminal defendant forfeited issues when he failed to file earlier cross-appeal after conviction and sentencing). In those cases the parties’ failure to appeal properly constituted forfeiture under the law-of-the-case doctrine because each sought a *331 change in the underlying judgment that adversely affected rights or interests. Here, the complete relief granted to Com-erica on summary judgment obviates application of the doctrine to Comerica’s disadvantage.
The dissent adheres to the view that this court could have exercised jurisdiction over an earlier cross-appeal by Comerica because “[i]n an appropriate case, appeal may be permitted ... at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III. ” Deposit Guar. Nat’l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 334, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (emphasis added). “A ‘stake in the appeal’ exists if the collateral ruling affects the prevailing party’s rights and if erroneous would work harm to the prevailing party’s interest.” 19 James Wm. Moore et ah, Moore’s Federal Practice § 205.04[1], at 205-43 (3d ed.2013). It cites, for example, Deposit Guaranty where plaintiffs successfully appealed denial of class certification, despite the defendant tendering damages to the individual plaintiffs. Deposit Guaranty, 445 U.S. at 336, 100 S.Ct. 1166. The Court reasoned that the plaintiffs “retain[ed] a continuing individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails.” Id.
Likewise, in United States v. Windsor, the Supreme Court found that the United States retained a sufficient stake in the litigation to support Article III standing even though the government agreed with plaintiffs on the unconstitutionality of the Defense of Marriage Act finding a requirement to expend Treasury funds “a real and immediate economic injury.” — U.S. -, 133 S.Ct. 2675, 2686, 186 L.Ed.2d 808 (2013).
Comerica, though, having won complete relief, retained no such stake to justify a cross-appeal that would satisfy Article III. Rather, like the plaintiff in ASARCO, the district court’s earlier judgment in favor of Comerica caused Comerica “no distinct and palpable injury,” as required by Article Ill’s case or controversy requirement. ASARCO, 206 F.3d at 724 (internal quotations marks omitted) (considering and rejecting plaintiff’s contention that the Deposit Guaranty exception permitted plaintiffs appeal of a favorable judgment). As in ASARCO, Hensley, and Wheeler, Comerica “thus lack[ed] standing to petition this court for review.” Id.

2. Limited Mandate

The Owner-Operators next maintain that the mandate rule, which restricts the issues to be reviewed on remand to those authorized, precludes our review of the district court’s damages determination. “Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate.” United States v. Campbell, 168 F.3d 263, 265 (6th Cir.1999). “The language used to limit the remand should be, in effect, unmistakable. ” Id. at 268 (emphasis added). “In the absence of an explicit limitation, the remand order is presumptively a general one.” United States v. Moore, 131 F.3d 595, 598 (6th Cir.1997).
Here, the prior panel’s mandate reads as follows: “For the foregoing reasons, we affirm in part and reverse in part the district court’s judgment and remand for further proceedings consistent with this opinion.” In re Arctic Express, Inc., 636 F.3d 781, 803 (6th Cir.2011). This language, which imposes no limit on the issues for review and establishes no partic *332 ular procedure for the district court to follow, conforms with language we have previously deemed a general remand. See, e.g., United States v. Lopez, 453 F. App’x 602, 604 (6th Cir.2011) (finding remand “for further proceedings consistent with this opinion” to be a general remand because it “contain[ed] no limiting language and is presumptively a general one”).
In contrast, we label mandates “limited” only when the language the remanding court employs provides specific instructions. See, e.g., United States v. Campbell, 168 F.3d 263, 268 (6th Cir.1999) (deeming remand limited when it directed the district court to hold an evidentiary hearing and instructed that “[t]he district court’s inquiry should relate to” a single, specific issue).
In construing the earlier mandate as limited to the statute-of-limitations issue, the dissent points to this language in the opinion: “[W]e agree with the district court that genuine issues of material fact exist which preclude a ruling, as a matter of law, on Comerica’s statute of limitations defense.” Arctic Express, 636 F.3d at 803. But this language, found in a section of the opinion different from the mandate, signaled only that the court found summary judgment inappropriate on the statute of limitations issue; it in no way limited the district court’s purview on remand.
3. The District Court’s Damages Determination
Because neither the law-of-the-case doctrine nor the mandate rule forecloses review of the district court’s damages determinations, we next consider Comerica’s argument that the district court erred in finding that “[t]he question of the amount of damages that [Comerica] owes to [the Owner-Operators] has ... already been determined.” Whether the earlier settlement agreement may set the amount of Comerica’s liability constitutes a question of law, and so we give fresh review. Paul Revere Life Ins. Co. v. Brock, 28 F.3d 551, 553 (6th Cir.1994).
We agree with Comerica the district court’s contrary holding notwithstanding that the prior decision of this court stopped short of determining Comerica’s liability and never reached the issue of damages. Rather, the factual background section of the opinion recounted that “plaintiffs entered into a $5.5 million settlement agreement ... [which] equaled the total amount of maintenance escrow funds, plus interest, owed by Arctic and D & A to [the Owner-Operators].” Id. at 789. And later in the opinion, in discussing the lending relationship with Comerica that Artie used as the vehicle to breach its trust obligations, the panel opined that “Comeri-ca must therefore disgorge the trust property received in breach of trust unless it can establish a viable defense.” Id. at 801 (emphasis added). The opinion thus forged no link between the $5.5 million settlement amount and its later reference to “the trust property received in breach of trust,” as the district court’s damages opinions suggest. To the contrary, the amount of damages due from Comerica was not an issue taken up by the panel in the earlier appeal. See generally id. (deciding (1) whether Motor Carrier Act regulations created a statutory trust for the benefit of the Owner-Operators; (2) when the Owner-Operators’ statutory trust interest attached; (3) whether Comerica constituted a bona fide purchaser for value; and (4) whether the relevant statute of limitations barred the Owner-Operators’ claim as a matter of law).
Because the district court erroneously found the prior panel’s opinion binding with respect to damages, it never required the Owner-Operators to submit evidence *333 of damages. It instead relied entirely on the earlier settlement agreement between the Owner-Operators and Arctic, with Arctic stipulating that it would not challenge the damages calculations. In other words, the district court determined Com-erica’s liability without hearing from Com-erica. “[PJarties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and a fortiori may not impose duties or obligations on a third party, without that party’s agreement.” City of Warren v. City of Detroit, 495 F.3d 282, 287 (6th Cir.2007); see also Davis v. Blige, 505 F.3d 90, 102-03 (2d Cir.2007) (“Settlement agreements are not to be used as a device by which A and B ... can ... take away the legal rights of C, a nonparty.”)
Yes, Comerica had notice of the settlement agreement. But notice of the settlement agreement without more leaves Com-erica’s right to challenge the district court’s damages determination unaffected. The Owner-Operators could bind Comeri-ca only through joining them as a party to the earlier litigation. See Martin v. Wilks, 490 U.S. 755, 765, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (“Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree.”); see also City of Warren v. City of Detroit, 495 F.3d 282, 286 (6th Cir.2007) (acknowledging that a non-party to a consent judgment “is entitled to its ‘own day in court’ to challenge actions taken under the judgments”).
Moreover, allowing the Owner-Operators to impose its settlement agreement on non-party Comerica appears particularly inequitable in this case, as the agreement required Arctic to pay only $900,000 of the stipulated-to $5.5 million. The Owner-Operators seek to saddle Comerica with the majority of the judgment despite the fact that Comerica had no opportunity to challenge the settlement amount. Indeed, when the Owner-Operators representatives apprised class members of the Arctic settlement, they assured the membership that they “have not given up on the total Judgment Amount. A claim has been filed against Comerica ... to recover the Judgment Amount in a separate action.” As the Fifth Circuit incisively observed in a similar factual context, “[t]he [settlement agreement] was the product not of adversaries, but of joint venturers. The plain purpose was to agree to an extraordinarily high judgment ... and impose the liability upon [Comerica] with no opportunity for [Comerica] to defend ... the judgment.” Lindsey v. Prive Corp., 161 F.3d 886, 890 (5th Cir.1998).
The dissent notes that “little suggests the damage amount will change” on remand because “[t]he calculation was not difficult.” But according to Comerica, errors pervade the stipulated-to damages calculations. It points to internal inconsistencies that inflated the total $5.5 million damages figure. (Appellant Br. at 55-57.) And Comerica maintains that the damages calculations include many transactions that postdate Comerica’s lending relationship with Arctic. (Appellant Br. at 57-58.) These alleged errors appear more significant than the dissent acknowledges. The district court must afford Comerica the opportunity to challenge these calculations in determining Comerica’s liability.
For these reasons, we VACATE the district court’s final judgment and REMAND for proceedings consistent with this opinion.